# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNATHAN GIVENS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 19-12448** |
| **DILLARD UNIVERSITY** | **SECTION I** |

## ORDER & REASONS

Before the Court is defendant Dillard University's ("Dillard" or the "University") motion[1] to dismiss plaintiffs Johnathan Givens ("Givens") and Jovan Lambey's ("Lambey") (collectively, the "plaintiffs") second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted.

## I.

Accepting all of the factual assertions in the plaintiffs' original, first, and second amended complaints as true, they are as follows: Givens and Lambey were both junior-year students at Dillard during the 2018–2019 school year.[2] The plaintiffs engaged in an alleged consensual sexual encounter with another female Dillard student on April 20, 2019.[3] The female student alleged that the encounter was not consensual and that the plaintiffs had raped her.[4]

---

[1] R. Doc. No. 38.
[2] R. Doc. No. 21, at 1–2.
[3] *Id.* at 3.
[4] *Id.*

Dillard suspended the plaintiffs on an interim basis, pending the completion of evidence-gathering and a criminal investigation by the New Orleans Police Department's ("NOPD") as well as the University's Title IX investigation.[5] This interim suspension and delay in the University's Title IX investigation is the subject of the plaintiffs' Title IX claim.

The plaintiffs received notice of their interim suspension via email on May 9, 2019.[6] As part of the interim suspension, Dillard prohibited the plaintiffs from being on University premises and participating in any campus or community activity that involved the University.[7] The plaintiffs were permitted to complete their Spring 2019 coursework through electronic communications with professors.[8] The plaintiffs' interim suspension letters stated that they could "request a meeting with the Vice President for Student Success or designee to demonstrate why an interim suspension is not merited[,]" but that "[r]egardless of the outcome of this meeting, the University may still proceed with the scheduling of a campus hearing."[9]

The plaintiffs, through their counsel, requested a meeting with the Vice President for Student Success, Roland Bullard ("Bullard"), to appeal their suspensions on May 13, 2019.[10] At the time this lawsuit was initiated, the plaintiffs' request had still not been granted.[11]

---

[5] R. Doc. No. 1-3 at 2, 4; R. Doc. No. 21, at 3 ¶ 18.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] R. Doc. No. 1, at 10.
[11] R. Doc. No. 21, at 3.

Dillard's registration system enabled the plaintiffs to choose class schedules and on-campus housing for the fall 2019 semester, which would have been their first semester as seniors.[12] On July 31, 2019 and August 8, 2019, the Bursar's office at Dillard emailed Lambey and Givens, respectively, informing them of their financial aid status for the 2019–2020 school year.[13] Dillard accepted Lambey's track scholarship and loans as payment for the fall 2019 semester, as well as Givens's grants and loans as payment for the entire school year.[14] Dillard also allowed the plaintiffs to be on campus to visit administrative offices "in furtherance of starting classes in fall 2019."[15]

The plaintiffs characterize the emails from the Bursar's office as Dillard lifting the plaintiffs' suspension and clearing them to return to campus.[16] The emails do not reference the pending criminal charges or the plaintiffs' interim suspensions.[17]

On August 26, 2019, the plaintiffs provided Dillard with written statements regarding their version of the events that led to the alleged consensual sexual

---

[12] R. Doc. No. 21, at 4.
[13] R. Doc. No. 1, at 13, 15.
[14] *Id.* Lambey's four-year track scholarship eligibility is now exhausted because his scholarship was accepted as payment for the fall 2019 semester. *Id.* at 5. Similarly, Givens is no longer eligible for his grant because he used the funds to pay for both the fall 2019 and spring 2020 semesters. *Id.*
[15] *Id.*
[16] *Id.* at 4 ¶ 22.
[17] R. Doc. No. 1, at 13, 15.

3

encounter on April 20, 2019.[18] To date, the Orleans Parish District Attorney has neither accepted nor refused the criminal charges against the plaintiffs.[19]

On September 4, 2019, the plaintiffs were advised by Dillard that they would be dropped from classes for non-attendance and potentially lose their tuition for the semester.[20] That same day, the plaintiffs filed this lawsuit alleging a violation of Title IX and state-law claims for negligence and breach of contract.[21] The plaintiffs seek damages as well as preliminary and permanent injunctive relief.[22] Dillard filed the instant motion,[23] pursuant to Federal Rule of Civil Procedure 12(b)(6), on October 4, 2019, which the plaintiffs oppose.[24]

## II.

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Cuvillier v. Taylor*, 503

---

[18] R. Doc. No. 22-2, at 4 ¶ 27; R. Doc. No. 21, at 3 ¶ 16.
[19] R. Doc. No. 22-2, at 4 ¶ 26. Dillard asserts in its reply to the plaintiffs' opposition that the Orleans Parish District Attorney's office is in fact pursuing criminal charges against Givens and Lambey and that each has been indicted with one count of second-degree rape. R. Doc. No. 43, at 3 n1. The Court, however, accepts as true all of the plaintiffs' well-pleaded facts when assessing the complaint, as explained more fully herein.
[20] R. Doc. No. 1, at 17–18.
[21] R. Doc. No. 1.
[22] *Id*. The plaintiffs amended their complaint twice, first on September 5, 2019, and again on September 19, 2019. *See* R. Doc. Nos. 9, 21. The plaintiffs filed a motion for a temporary restraining order on September 6, 2019, which this Court denied that same day. R. Doc. Nos. 10, 15.
[23] R. Doc. No. 38.
[24] R. Doc. No. 39.

F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 547, 127 S.Ct. 1955)).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679, 129 S.Ct. 1937 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). "[T]he Court may consider documents that are essentially 'part of the pleadings'—that is, any documents attached to or incorporated into the plaintiff's complaint by reference that are central to the plaintiff's claim for relief."[44] *Zerangue v. Lincoln Nat'l Life Ins. Co.*, No. 19-1939, 2019 WL 2058984, at *2 (E.D. La. May 9, 2019) (Feldman, J.) (quoting *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

5

"Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

The plaintiffs argue that Dillard's motion to dismiss should be converted into a Rule 56 motion for summary judgment pursuant to Rule 12(d) because Dillard's motion references matters outside of the pleadings, such as attached exhibits and affidavits.[25] Dillard asserts that it submitted no exhibits or affidavits in support of its motion to dismiss, and that its contentions are solely based upon the allegations contained within the original, first, and second amended complaints.[26]

Rule 12(d) states, in pertinent part, that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In considering a Rule 12(b)(6) motion to dismiss, a court must limit itself to the pleadings, with one exception. The Fifth Circuit has approved the consideration of documents attached to a motion to dismiss. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). However, the Fifth Circuit made it clear that "such consideration is limited to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins*, 224 F.3d at 498–99). When "matters outside the pleadings" are submitted in support of or in opposition to a Rule 12(b)(6) motion to dismiss, Rule

---

[25] R. Doc. No. 39, at 3.
[26] R. Doc. No. 43, at 2.

6

12(d) grants courts the discretion to consider those materials and convert the motion into a motion for summary judgment, but it does not require them to do so. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988).

Although Dillard attached exhibits and affidavits to its memorandum[27] in opposition to the plaintiffs' motion for injunctive relief, which are not considered by the Court, it did not attach such documents to its motion to dismiss. Therefore, the Court will properly consider Dillard's motion as a motion to dismiss pursuant to Rule 12(b)(6) and assume as true the factual allegations asserted in the plaintiffs' original, first, and second amended complaints, as well as the exhibits attached thereto.[28]

---

[27] R. Doc. No. 22.

[28] The plaintiffs also request additional time to amend their second amended complaint to allege additional facts in the event that the Court declines to convert the defendant's motion into a motion for summary judgment. R. Doc. No. 39, at 3. The Court will not grant the plaintiffs leave to amend their complaint for a *third* time.

Rule 15 of the Federal Rules of Civil Procedure provides that, if a party is not amending as a matter of course, it may only amend its pleading "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The interests of justice do not weigh in favor of giving the plaintiffs an additional opportunity to amend their complaint. The plaintiffs had adequate opportunities to plead sufficient facts and fully brief their position to the Court in their original, first, and second amended complaints, as well as in their motion for a temporary restraining order and response to the defendant's motion to dismiss. The plaintiffs had notice that Dillard intended to argue that they had not sufficiently pled a claim under Title IX because they did not allege that the "supposedly flawed procedure that led to their temporary separation from the University was due to their sex or gender." *See* R. Doc No. 22, at 7. Dillard outlined its argument in its memorandum in opposition to the plaintiffs' motion for injunctive relief, which was filed more than one month before the plaintiffs filed their response in opposition to Dillard's motion to dismiss.

The plaintiffs also do not explain in their response what additional facts or allegations they would plead that would raise their right to relief under Title IX "above the speculative level," such as by pointing to evidence that the plaintiffs were treated

7

## III.

### *i.*

Count one of the plaintiffs' second amended complaint alleges that the "[p]laintiffs' rights to fair and timely review of the [University's] charges [against them] was violated by Dillard's inaction based on the conduct described [in the second amended complaint]," in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.*[29]

Title IX's relevant provisions state that "[n]o person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added).[30] That provision is enforceable through an implied private right of action, patterned after Title VI of the Civil Rights Act of 1964's ban on racial discrimination in the workplace and universities. *Cannon v. University of Chicago*, 441 U.S. 677 (1979).

---

unequally on the basis of their sex. *See Twombly*, 550 U.S. at 555. Furthermore, permitting plaintiffs to amend their complaint for a third time would unduly delay this action. *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270–71 (5th Cir. 2010) (holding that denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment) (citations omitted); *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367–68 (5th Cir. 2014) (affirming the district court's denial of leave to amend because the plaintiff had already been granted leave to amend twice and he was aware of the deficiencies in his complaint).

[29] R. Doc. No. 21, at 6 ¶ 42.
[30] Dillard does not dispute that it is subject to Title IX's provisions.

8

To state a plausible claim for relief under Title IX, a plaintiff-student must allege that he or she was treated unequally or discriminated against on the basis of his or her sex. *See* 20 U.S.C. § 1681(a). Generally, private challenges to disciplinary proceedings under Title IX proceed under one of four theories of liability: (1) plaintiffs claiming an erroneous outcome of a disciplinary proceeding, (2) plaintiffs claiming selective enforcement of university procedures to students of different sexes, (3) plaintiffs claiming deliberate indifference to sexual harassment or sexual assault on campus, and (4) plaintiffs claiming a university's actions were based on archaic assumptions about the roles or behavior of men and women. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999) (recognizing liability for deliberate indifference that causes students to suffer harassment or make them vulnerable to harassment); *Pederson v. La. St. Univ.*, 213 F.3d 858, 880–82 (5th Cir. 2000) (recognizing that classifications based on "archaic assumptions" are facially discriminatory and constitute intentional discrimination in violation of Title IX); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) (recognizing Title IX claims for erroneous outcome and selective enforcement); *see also Plummer v. Univ. of Houston*, 860 F.3d 767, 777 (5th Cir. 2017) (recognizing the erroneous outcome and selective enforcement theories of liability as identified in *Yusuf*); *Oliver v. Univ. of Tex. Southwestern Med. School*, No. 18-1549, 2019 WL 536376, at *17 (N.D. Tex. Feb. 11, 2019) (recognizing the four generalized theories of liability under Title IX); *Doe v. Univ. of Miss.*, No. 16-63, 2018 WL 3570229, at *4 (S.D. Miss. July 24, 2018) (same).

The plaintiffs do not rely on any generalized theory of liability in support of their Title IX claim, but rather allege that Dillard violated their rights to a fair and timely review of the charges against them, in violation of 34 C.F.R. § 668.46(k)(3)(i)(A) and "2001 Guidance at (IX)."[31] The plaintiffs argue that the reasonableness of Dillard's actions based on the timing of the NOPD investigation "should be fleshed out during discovery," and that "discovery is required to determine what actions and/or inactions [Dillard] took when letting this matter lay unaddressed while waiting for movement" in the NOPD's criminal investigation.[32]

---

[31] R. Doc. No. 21, at 4 ¶ 21, 6 ¶ 42. The plaintiffs do not argue that 34 C.F.R. § 668.46(k) provides a cause of action for their Title IX claim. *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011) (holding that the implied private right of action under Title IX does not allow recovery in damages for violations of administrative requirements) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998)).

The regulation provides, in pertinent part, that "an institution must include in its annual security report a clear statement of policy that addresses the procedures for institutional disciplinary action in cases of . . . sexual assault[,] . . . and that . . . [p]rovides that the proceedings will . . . include a prompt, fair and impartial process from the initial investigation to final result[.]" 34 C.F.R. § 668.46(k)(2)(i). "A prompt, fair, and impartial proceeding includes a proceeding that is . . . [c]ompleted within reasonably prompt timeframes designated by an institution's policy, including a process that allows for the extension of timeframes for good cause[.]" 34 C.F.R. § 668.46(k)(3)(i)(A).

It appears that the plaintiffs also reference the January 2001 Revised Sexual Harassment Guidance issued by the U.S. Department of Education Office for Civil Rights. The section that the plaintiffs cite is entitled, "Prompt and Equitable Grievance Procedures," and indicates that the Office for Civil Rights considers a number of factors in evaluating whether a school's grievance procedures are prompt and equitable, including whether the procedures provide for "[d]esignated and reasonably prompt timeframes for the major stages of the complaint process[.]" U.S. Dep't of Educ., Revised Sexual Harassment Guidance, at 20 (2001). The plaintiffs do not argue that the guidance document provides a cause of action.

[32] R. Doc. No. 39, at 2.

The plaintiffs' failure to allege that the University treated them unequally or discriminated against them *on the basis of their sex* by delaying its investigation and suspending them in the interim is fatal to their Title IX claim under any theory of liability. However, the Court will address each theory in turn.

Under the erroneous outcome theory of liability, "the claim is that the charged student (plaintiff) was innocent and wrongly found to have committed an offense." *Plummer*, 860 F.3d at 777 (citing *Yusuf*, 35 F.3d at 715). "To state a viable 'erroneous outcome' claim, a plaintiff must (1) 'allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;' and (2) show that 'gender bias was a motivating factor behind the erroneous finding.'" *Oliver*, 2019 WL 536376, at *17 (quoting *Yusuf*, 35 F.3d at 715).

Dillard's investigation into the allegations against the plaintiffs is ongoing, and the University has not yet reached a determination as to whether it believes the plaintiffs committed the alleged rape.[33] However, even assuming that the interim suspension was an "outcome" for purposes of Title IX, the plaintiffs do not allege that gender bias was a motivating factor behind the University's decision to suspend them. The plaintiffs' allegations thus do not support an erroneous outcome claim.

The Court similarly finds that the plaintiffs have not pled sufficient facts to support a claim of selective enforcement. Under the selective enforcement theory of liability, the plaintiffs must allege "that regardless of the student's culpability, the severity of the penalty and/or the university's decision to initiate proceedings was

---

[33] R. Doc. No. 38-1, at 7.

affected by the charged student's gender." *Plummer*, 860 F.3d at 777 (citing *Yusuf*, 35 F.3d at 715). "In other words, the plaintiff must show that a person of the opposite sex was in circumstances sufficiently similar to plaintiff's and was treated more favorably by defendant." *Klocke v. Univ. of Tex. at Arlington*, No. 17-285, 2018 WL 2744972, at *6 (N.D. Tex. June 7, 2018). "This type of claim is centered on the familiar concept of disparate treatment accompanying traditional discrimination cases." *Pachecho v. St. Mary's University*, No. 15-1131, 2017 WL 2670758, at *18 (W.D. Tex. June 20, 2017).

The plaintiffs do not allege that the University erred in its decision to initiate an investigation into the alleged victim's rape allegations against them. Rather, the plaintiffs argue that the University unreasonably delayed its investigation and wrongly excluded them from campus after allowing them to register for classes. The plaintiffs do not allege that the University's actions were affected by the plaintiffs' sex or that a similarly situated female student was treated more favorably. Accordingly, the plaintiffs have not stated a viable selective enforcement claim.

The third and fourth theories of liability under Title IX are also inapplicable. The plaintiffs do not claim that Dillard is deliberately indifferent to sexual harassment, sexual discrimination, or sexual assault on campus, or that Dillard's actions in delaying its investigation and imposing an interim suspension were based on archaic assumptions about the roles or behavior of men and women. *See Plummer*, 860 F.3d at 777–78 (holding that a university can be held liable for deliberate indifference to discrimination against or harassment of a student on the basis of sex,

but that such deliberate indifference must meet a very high standard of misconduct) (citations omitted); *Pederson*, 213 F.3d at 881 (holding that the defendant-university persisted in systematic, intentional, and differential treatment of women, and that such outdated attitudes and archaic assumptions about women "amply demonstrate [the] intention to discriminate") (citations omitted).

The plaintiffs have not alleged any facts that might support their claim that Dillard violated Title IX when it delayed its investigation into the allegations against them and suspended the plaintiffs pending the outcome of its investigation. Even construing the facts in the light most favorable to the plaintiffs, the Court cannot reasonably infer that Dillard is liable under Title IX for the misconduct the plaintiffs allege in count one of their second amended complaint. Therefore, the Court finds that the plaintiffs have failed to state a plausible claim for relief, and it must dismiss count one of the second amended complaint.

### ii.

Having concluded that the plaintiffs' single federal law claim should be dismissed, only their state law claims remain. A district court may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to these factors, the Fifth Circuit has instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Id.*

These factors weigh in favor of dismissal without prejudice of the Louisiana law claims so that the plaintiffs may assert those claims in Louisiana state court. The Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Moreover, allowing Louisiana courts to rule on Louisiana law encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Fountain v. New Orleans City*, No. 18-145, 2018 WL 3475375, at *2–3 (E.D. La. July 19, 2018) (Africk, J.) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citations omitted)). "[D]eference in this case with respect to the state law issue[s] promotes the important interest of comity to state courts." *Id.* Furthermore, the parties will not be unduly prejudiced because the litigation is still in its early stages.

IV.

Accordingly,

**IT IS ORDERED** that the defendant's motion to dismiss count one of the second amended complaint is **GRANTED.** Count one of the second amended complaint is **DISMISSED WITH PREJUDICE**.

14

**IT IS FURTHER ORDERED** that counts two and three of the second amended complaint are **DISMISSED WITHOUT PREJUDICE** to their being timely asserted in state court.

New Orleans, Louisiana, December 3, 2019.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**